Joshua Swigart (SBN 225557)
Josh@SwigartLawGroup.com
Katherine Tuohy (SBN 353967)
Katherine@SwigartLawGroup.com
**SWIGART LAW GROUP, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 866-219-3343
*Attorneys for Plaintiff*

Daniel Shay (SBN 250548)
Dan@ShayLegal.com
Harrison Lynch (SBN 355139)
Harrison@ShayLegal.com
**SHAY LEGAL, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 619-222-7429

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KATHLEEN CUMMINGS, individually and for all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>DIN/CAL MANAGEMENT, INC. and TDC MANAGEMENT CO., L.P.,<br><br>Defendants. | Case No: 3:26-cv-03939-DMS-BJW<br><br><u>CLASS ACTION</u><br><br>**FIRST AMENDED COMPLAINT**<br><br>1. Unlawful Utility Fees, San Diego Mun. Code § 98.1201 *et seq.*<br>2. Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*<br>3. Unfair and Deceptive Business Practices, Cal. Bus. & Prof. Code § 17200 *et seq.*<br>4. Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 *et seq.*<br>5. Statutory Larceny, Cal. Pen. Code §§ 484, 496 & 532<br>6. Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962 & 1964<br><br>**<u>JURY TRIAL DEMANDED</u>** |

## INTRODUCTION

Plaintiff Kathleen Cummings ("Plaintiff") brings this class action on behalf of herself, and the Class and Subclass defined below (comprised of "Class Members"), against defendants Din/Cal Management, Inc. and TDC Management Co., L.P. ("Defendants") for violating numerous landlord-tenant laws and consumer protection laws. Plaintiff makes these allegations based on personal knowledge, information and belief, and investigation conducted by Plaintiff's attorneys.

## JURISDICTION AND VENUE

1. The Court has federal question jurisdiction under 28 U.S.C. § 1331, because Plaintiff's claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") arise out of violation of federal law 18 U.S.C. § 1961.

2. This Court has supplemental jurisdiction for Plaintiff's state law claims under 28 U.S.C. § 1367(a).

3. Alternatively, jurisdiction is proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because Plaintiff and all Class Members are citizens of California, while Defendant Din/Cal Management, Inc. is incorporated in Texas with its principal place of business in Texas, and TDC Management Co., L.P. was formed in Delaware with its principal place of business in Texas, and the amount in controversy exceeds $5,000,000.

4. There are at least one hundred (100) members of the proposed Class and Subclass and, on information and belief, thousands. Plaintiff and the Class Members are requesting damages related to fees, which when aggregated across thousands of Californians will exceed the $5,000,000 threshold for CAFA jurisdiction.

5. Both the diversity requirement and the damages requirement under CAFA are met, and this Court has jurisdiction.

6. Because Defendants have locations in California and directly conduct business in California, personal jurisdiction is established.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because (1)

Plaintiff resides in San Diego, within this judicial district, (2) the conduct complained of herein occurred in San Diego, and (3) Defendants conduct business in this judicial district.

## PARTIES

### A. Plaintiff

8. Plaintiff is an individual over the age of eighteen (18) years, and at all times relevant was a resident of the County of San Diego in the State of California.

9. At all relevant times, Plaintiff was a tenant at Defendants' apartment complex in San Diego commonly known as "The Townsend" located at 5075 Camino de la Siesta, San Diego, California 92108 (referred to herein as "The Townsend").

10. Plaintiff and every Class Member resided in California at the time their cause of action accrued, all injuries complained of herein occurred within California.

### B. Defendants

11. Din/Cal Management, Inc. is a Texas corporation with its principal place of business in Texas. It holds an active California Department of Real Estate corporate license, with branch offices in San Diego, through which it manages Defendants' San Diego properties, including The Townsend.

12. Din/Cal Management, Inc. is the sole general partner of TDC Management Co., L.P. As general partner, Din/Cal is generally liable for the obligations of TDC Management Co., L.P., including the conduct alleged herein.

13. TDC Management Co., L.P. is a Delaware limited partnership with its principal place of business in Texas.

14. Defendants manage The Townsend and own or manage various other apartment complexes in San Diego and throughout California.

15. The Townsend is owned by The Townsend Apartments, LLC, a California limited liability company for which Defendants serve as property manager. It is a member of the enterprise alleged in the Sixth Cause of Action (RICO) below.

16. Defendants are large apartment developers, managers, owners, and

landlords that own and/or operate many apartment units in San Diego and across California. According to their website, Defendants are among the nation's largest multi-family developers, with 80,000 multi-family units developed nationwide, 50,000 student housing beds developed nationwide, and $3.78 billion in assets under management.[1] As institutional landlords, Defendants are highly standardized and corporate—prioritizing consistency, scale, and long-term financial returns for their owners and shareholders.

17. In addition to The Townsend, Defendants own and/or manage at least the following properties in California:

a. Atlas Alvarado, located at 6535 Alvarado Rd., San Diego, California 92120.
b. Five55, located at 555 Pacific Ave., Santa Cruz, California 95060.
c. Millennium Santa Monica, located at 2929 Pennsylvania Ave., Santa Monica, California 90404.
d. Paseo Place, located at 5665 Lindo Paseo, San Diego, California 92115.
e. Sterling Berkeley Collection, located at 1916 Oxford Street, Berkeley, California.

18. Based on the above-identified apartment complexes, Defendants manage an estimated 1,725 individual apartment units in their California portfolio.

19. All of the tenants in the above properties, and properties presently unknown throughout California, are impacted by Defendants' policies, practices, and procedures.

20. Specifically, the tenants at The Townsend, Atlas Alvarado, and Paseo Place are impacted by Defendants' actions that violate the San Diego Municipal Code.

21. Defendants were and are Plaintiff's and Class Members' landlords at all times relevant.

22. Defendants have a centralized rent and fee policy for all the California

[1] https://www.dinersteincos.com/about-us (last visited Sept. 24, 2026).

properties under their portfolio. They develop, promulgate, and administer fee policies and practices uniformly across their California controlled and/or managed properties.

## GENERAL FACTS

23. Plaintiff brings this class action because of Defendants' policies, practices, and procedures that disregard the laws of California and the City of San Diego that protect tenants.

24. A landlord is required to keep and maintain a property in a habitable condition. This is known as the implied warranty of habitability.

25. Under Cal. Civ. Code § 1941.1, a landlord is required to provide a dwelling that substantially complies with habitability standards, including (1) effective waterproofing and weather protection of roof and exterior walls, (2) plumbing facilities in good working order with hot and cold running water connected to a sewage system, (3) properly installed and maintained gas facilities, (4) heating facilities in good working order, (5) electrical lighting with wiring and outlets in good working order, (6) clean and sanitary buildings, grounds, and common areas free from debris, filth, and vermin, and adequate garbage and waste receptacles, (7) floors, stairways, and railings maintained in good repair, and (8) a building maintained in compliance with applicable building and housing codes materially affecting health and safety. *See Green v. Superior Court*, 10 Cal. 3d 616 (1974) (recognizing implied warranty of habitability); *Knight v. Hallsthammar*, 29 Cal. 3d 46 (1981) (tenant's knowledge of defects is not a prerequisite to the landlord's breach, which exists regardless of the landlord's fault or opportunity to repair); *Stoiber v. Honeychuck*, 101 Cal. App. 3d 903 (1980) (tenant may affirmatively sue in tort and nuisance for a habitability breach, not merely raise it as a defense). These duties cannot be shifted to the tenant by contract: Cal. Civ. Code § 1942.1 voids any lease provision purporting to waive or modify the landlord's duties under Sections 1941 and 1942, and Cal. Civ. Code § 1953 voids any lease term purporting to modify or waive a tenant's rights and remedies. *See Jaramillo v. JH Real Estate Partners, Inc.*, 111 Cal. App. 4th 394 (2003) (Cal. Civ. Code § 1953

bars a residential lease from modifying or waiving a tenant's rights and remedies relating to the tenancy).

26. California Civil Code § 1942.1 contains one (1) exception: "the lessor and the lessee may agree that the lessee shall undertake to improve, repair or maintain all or stipulated portions of the dwelling as part of the consideration for rental." That exception covers a tenant who undertakes to do the work. It does not authorize a landlord to keep performing its own duty through its own vendors and bill the tenant a monthly line item for that performance. Plaintiff undertook no work. She was billed.

27. When the Legislature has permitted landlords to bill tenants separately for a habitability-related service, it has done so expressly and subject to detailed conditions. Cal. Civ. Code § 1954.201 *et seq.* regulates separate billing for submetered water through submeter standards, mandatory pre-lease disclosures, an exclusive list of permissible charges, a cap on billing and administrative fees (§ 1954.205(a)(3)), and prescribed billing procedures. No comparable statute authorizes landlords to bill tenants separately for heating water, garbage and waste removal, or pest control.

28. When offering a unit for rent, maintaining habitability standards has long been a landlord's responsibility and is done at the landlord's expense. The monthly rent for a residential unit is set by market conditions and necessarily accounts for the landlord's legal obligations, including the duty to maintain the property in a habitable condition. Compliance with these obligations is a basic cost of operating rental property. Any attempt to pass those costs to the tenant improperly shifts the landlord's statutory duties onto the tenant and allows the landlord to retain the benefit of rent which should be priced to include those obligations while avoiding the expense of actually performing them.

29. Charging California-level rent requires a landlord to deliver a California-standard home. However, by directly passing on such maintenance costs, landlords like Defendants seek to charge California rent without maintaining California standards.

30. In California, a landlord is responsible for providing dwellings with hot

water, adequate garbage receptacles, and no pests under Cal. Civ. Code § 1941.1. Charging a tenant a fee to heat water, a fee to manage trash, and a fee to manage pests improperly shifts the landlord's legal obligations to the tenant.

31. Defendants charge their tenants fees, including "gas to heat water," "Valet Waste," and "Pest Control" ("Contested Fees"). The Contested Fees violate the implied warranty of habitability because these fees are used to shift Defendants' obligation to keep a unit habitable to Plaintiff and Class Members. If Defendants were allowed to shift such charges, Defendants would absolve themselves of their obligations as a landlord to the detriment of Plaintiff and Class Members.

32. The Contested Fees are mandatory. A tenant cannot rent a unit without paying them and cannot opt out of them. Valet Waste and Pest Control are flat monthly charges set by Defendants—$35.00 and $3.00, respectively, under Defendants' Resident Fee Disclosure Addendum—not amounts allocated from a utility bill by ratio or formula.

33. Defendants' lease and addenda are standardized forms presented on a take-it-or-leave-it basis. Tenants cannot negotiate, modify, or strike the Contested Fees or the utility charges described below. Because Defendants impose the same charges at every California property they manage, a tenant cannot avoid them by choosing a different property managed by Defendants.

34. By deceptively labeling Defendants' statutory habitability obligations as tenant-payable fees, Defendants engage in a scheme to defraud tenants by demanding that they pay charges that the law requires the landlord to bear as part of the ordinary cost of operating a rental property.

35. Defendants' conduct was not done in isolation, Defendants made a calculated business decision to continue to defraud their tenants, with the intention to organize efforts in a pattern of systemic larceny. Such actions were done in bad faith and done to increase the overall profitability of each unit.

36. In addition to California law, the City of San Diego recently passed a local

ordinance that imposes strict rules a landlord must adhere to if it wishes to charge a tenant for utilities such as water, stormwater, sewer, and trash collection.

37. On August 17, 2025, San Diego Mun. Code § 98.1201 *et seq*. (the "Ordinance") became effective. It imposes several notice and disclosure requirements on a landlord that charges utility fees. First, the utility fee the landlord charges the tenant shall be no greater than the amount the landlord actually pays for the tenant's utility services. Second, the landlord must provide the tenant with written notice in the lease that the tenant will be charged a utility fee. Or, if the notice is not in the lease, the landlord must provide written notice as prescribed in Cal. Code Civ. Proc. § 1162(a).

38. The written notices described above must inform the tenants of the landlord's obligations under San Diego Mun. Code §§ 98.1204 and 98.1205 and shall include specific language found in San Diego Mun. Code § 98.1204(c).

39. If the landlord began charging tenants utility fees prior to August 17, 2025, written notice under San Diego Mun. Code § 98.1204(c) was to be provided to the tenants no later than ninety (90) days after August 17, 2025, which was November 15, 2025.

40. If a landlord utilizes a third-party billing service to manage, bill, or collect utility fees from the tenant on behalf of the landlord, then the tenant must be provided invoices, receipts, or other verifiable documentation to support the charges passed through to the tenant under San Diego Mun. Code § 98.1206.

41. Here, Defendants charge their tenants water, sewer, and a service fee ("Contested Utilities") through Defendants' third-party utility billing company, Conservice, LLC ("Conservice"). Defendants did not provide Plaintiff proper notice as required by the San Diego Municipal Code. Defendants do not substantiate their charges with receipts, invoices, or other documentation. Thus, Defendants are collecting utility fees that they are not entitled to collect.

42. The service fee is listed in Defendants' Resident Fee Disclosure Addendum as a "Conservice Administrative Service Charge – $3.00 (monthly water

and sewer fee).” It is not a City charge for water or sewer service. It is Conservice’s charge for billing administration. Under San Diego Mun. Code § 98.1202, a “utility fee” is “the amount the City charges for utility services.” Every dollar of the Conservice Administrative Service Charge is therefore an amount in excess of what Defendants pay for the tenant’s utility services under San Diego Mun. Code § 98.1203(a).

43. Defendants’ lease identifies Conservice as the third-party billing company for the Contested Utilities. Plaintiff’s billing statements were issued by Billee Technologies, Inc. (“Billee”) and list the $3.00 charge as a “Property Admin Fee.” Each statement says, “This bill is not from The City of San Diego.” On information and belief, Conservice and Billee, acting on Defendants’ behalf, manage, calculate, bill, or collect the Contested Utilities and pass their costs through to tenants as the $3.00 administrative charge. The respective roles of Conservice and Billee are known to Defendants, not to Plaintiff.

## SPECIFIC FACTS

### A. Background

44. On or around May 28, 2025, Plaintiff signed a written form lease, which included several addenda, to live in a unit at The Townsend, which was countersigned by Defendants’ agent.

45. Defendants use the same, or substantially the same, form lease and all addenda for each tenant at The Townsend, and every other property that Defendants manage in California.

46. The form lease Defendants use contains several charges and fees including the Contested Fees. It does outline the Contested Utilities. But it does not provide any disclosures related to Defendants’ obligations under San Diego Mun. Code §§ 98.1204 and 98.1205 as required by San Diego Mun. Code § 98.1204(c).

47. Defendants' Utility and Services Addendum bills water and sewer to Plaintiff by "Sub-metering" and names Conservice as the third-party billing company. The same addendum states, “Submetered Water does not apply under this Addendum.”

It refers the tenant to a separate Water Submeter Lease Addendum. The lease Plaintiff signed contains no Water Submeter Lease Addendum. Defendants never gave Plaintiff the disclosures Cal. Civ. Code § 1954.204 requires before a landlord may bill a tenant separately for submetered water.

48. The Utility and Services Addendum bills “Gas to heat water” through Conservice by an “Allocation based on a combination of square footage of your dwelling unit and the number of persons residing in your dwelling unit.” It bills Valet Waste through Conservice at a flat $35.00 per month. It adds Pest Control as a flat $3.00 monthly charge. Each is a separately named, separately priced service.

49. The Utility and Services Addendum leaves its “Monthly Administrative Billing Fee” blank. The $3.00 administrative charge does not appear in the Utility and Services Addendum.

50. From July 2025 through at least March 2026, Defendants charged Plaintiff, and Plaintiff paid, a total of $397.24 in Contested Fees.

51. From August 2025 through at least March 2026, Defendants charged Plaintiff, and Plaintiff paid, $207.23 for Contested Utilities, including the monthly $3.00 Conservice Administrative Service Charge, without first providing the notice due under the San Diego Municipal Code or providing any receipts for such charges.

52. Defendants' statements bill Plaintiff for water and sewer in five (5) separate line items: a "Water Base Charge," "Cold Water Usage," "Hot water usage," a "Sewer Base Charge," and "Sewer Usage." Defendants separately bill two (2) gas charges for "Hot Water Heating."

53. Defendants calculate the two (2) “Hot Water Heating” gas charges by two (2) different formulas. One multiplies the number of occupants by one rate. The other multiplies the unit’s square footage by a different rate. Neither measures the gas used in Plaintiff’s unit. The charge rises with how many people live in a unit and how large it is, not with any use of gas.

54. On November 4, 2025, Defendants sent Plaintiff an email regarding the

Ordinance, confirming that San Diego Mun. Code § 98.1201 *et seq.* applies to their utility charges. But the email was not proper service. Defendants never delivered written notice under San Diego Mun. Code § 98.1204 to Plaintiff personally or by mail under Cal. Code Civ. Proc. § 1162(a), and email is neither notice in the lease under San Diego Mun. Code § 98.1204(a)(1) nor personal delivery or mail service under San Diego Mun. Code § 98.1204(a)(2).

55. Defendants sent the email from townsend@emailrelay.com under the subject "Utility Billing - San Diego O-21987." The notice in the email was an unfinished template. Its "To:" line was blank. It was dated "[11/3/2025]." It was from "[The Townsend] or Conservice." It was signed "[he Townsend Management Team/Conservice]."

56. On information and belief, Defendants used the same email-only method for every tenant at their San Diego properties and provided none of them notice in the lease or by personal delivery or mail.

57. Defendants continued to charge Plaintiff the Contested Utilities after November 15, 2025, without having provided notice in the form and by the method San Diego Mun. Code § 98.1204 requires.

58. Defendants continue to impose these fees and charges on their tenants. While they may sound relatively small, when multiplied by thousands of tenants, every month, they add up quickly. Defendants are banking on their tenants not raising the issue, which is why this class action is necessary.

B. **Defendants' Acts of Theft and Fraud**

59. Defendants have a centralized fee policy for all their California properties. They develop, promulgate, and administer fee policies and practices uniformly across their California controlled and/or managed properties, in addition to charging unlawful fees.

60. Defendants' policies and procedures amount to illegal activity, resulting in repeated acts of larceny.

61. **Statutory Larceny.** To commit statutory larceny in California, one must (i) take the personal property, (ii) of another, (iii) without consent, and (iv) with the intent to permanently deprive the owner of that property.[2]

62. Liability is imposed upon all the actors who commit those acts outlined above, and those who knowingly aid and abet such actors, or those who knowingly receive such stolen property.[3]

63. Defendants have developed common policies, practices, procedures, or schemes designed to steal money from current and former tenants, without consent, to benefit themselves, with the intention of permanently depriving the money from the current and former tenants.

64. Such money is stolen pursuant to false and fraudulent misrepresentations as outlined above, which are made knowingly and by design, pursuant to common policies, practices, procedures, or schemes. Defendants are not ignorant of their illegal conduct. Defendants know that they are stealing money from their tenants, or otherwise knowingly aid and abet the theft of such property.

65. **Federal Wire Fraud.** Defendants are operating pursuant to a scheme to defraud current and former tenants out of money or property in that they charge tenants exorbitant and unsubstantiated fees, without a lawful basis to do so.

66. To commit wire fraud, one must (i) have a scheme to defraud someone out of money or property, (ii) by making a material misrepresentation or omission, (iii) with the intent to defraud, and (iv) effectuate such scheme by wire transmission.[4]

67. Defendants represent a purported lawful basis to their tenants, but such representations to their tenants are material, false, and done with the intention to defraud.

68. Defendants sent electronic messages to Plaintiff and Class Members which are each wire transmissions. Each message (i) was sent as part of a scheme to

---

[2] Cal. Pen. Code § 484.
[3] Cal. Pen. Code § 496.
[4] 18 U.S.C. § 1343.

defraud them out of money or property, (ii) contained at least one material misrepresentation or omission, (iii) was sent with the intent to defraud, and (iv) was sent by wire transmission.

69. Every month, Defendants charged Plaintiff and Class Members illegal fees in violation of California law. Each such act, coupled with the electronic messages, constitutes wire fraud in violation of 18 U.S.C. § 1343. Defendants, in conjunction with their officers, directors, and managing agents, knowingly acted in furtherance of a scheme they devised to defraud tenants of money through unlawful fees.

70. All such acts outlined in the preceding paragraphs were related and continuous.

C. **Defendants' Billing Representations**

71. Each month, Defendants—directly and through their third-party billers—transmitted to Plaintiff by email and through an online resident portal a billing statement and payment demand. Each statement listed the Contested Fees and Contested Utilities as separately itemized charges and represented that the listed amounts were due and owing by Plaintiff. Defendants transmitted to Plaintiff monthly statements demanding payment of the Contested Fees in each month from July 2025 through March 2026, and of the Contested Utilities in each month from August 2025 through March 2026. The precise transmission date, sender, and content of each statement are recorded in Defendants' and Conservice's billing systems.

72. For example, Billee issued Plaintiff Invoice No. 4277100 from Dallas, Texas, dated February 18, 2026, for the January 2026 billing period. It directed Plaintiff to pay The Townsend by March 1, 2026. It demanded a "Property Admin Fee" of $3.00, a "Valet Trash Flat Fee" of $35.00, a "Pest Control Flat Fee" of $3.00, a gas "Hot Water Heating" charge of $25.55 computed as "2 Occ. x $12.78," and a second gas "Hot Water Heating" charge of $17.07 computed as "750 Sqft x $0.022760."

73. Each statement represented, expressly and by its demand for payment, that the Contested Fees and Contested Utilities were lawful charges Plaintiff was obligated

to pay. Those representations were false. The Contested Fees were void under Cal. Civ. Code §§ 1942.1 and 1953, and the Contested Utilities were not chargeable because Defendants had not complied with San Diego Mun. Code §§ 98.1203, 98.1204, and 98.1206.

74. Defendants had a duty to disclose that the Contested Utilities were not lawfully owed. First, San Diego Mun. Code § 98.1204 required Defendants to give tenants written notice, in a specified form and by a specified method, before charging any utility fee. Second, Defendants had exclusive knowledge of material facts not known or reasonably accessible to tenants, including the City bills, the allocation formula, and what the Conservice Administrative Service Charge pays for. Third, Defendants made partial representations that were misleading without disclosure of those facts: Defendants' Resident Fee Disclosure Addendum describes the Conservice Administrative Service Charge as a "monthly water and sewer fee," when it is not a charge for City water or sewer service.

75. Plaintiff paid each charge in reliance on Defendants' representation that it was owed. Had Plaintiff known the charges were not lawfully owed, she would not have paid them.

D. **Defendants' Knowledge and Intent**

76. Defendants knew the Contested Fees and Contested Utilities were not lawfully owed when they represented otherwise and collected them, as shown by the following facts:

a. As to both: Defendants are sophisticated institutional landlords with a multi-state portfolio, legal counsel, a California real estate license, and San Diego branch offices.
b. As to both: Defendants adopted a centralized fee policy at the corporate level and applied it uniformly across their California properties through standardized, lawyer-drafted form leases and addenda.
c. As to the Contested Fees: Defendants reused a template fee addendum

across properties. Although captioned for The Townsend, Defendants' Resident Fee Disclosure Addendum recites that the listed charges "will apply to each lease at Millennium Santa Monica"—a different property.

d. As to the Contested Fees: On May 12, 2026, Plaintiff served Din/Cal with written notice under the Consumer Legal Remedies Act ("CLRA") identifying the Contested Fees as unlawful charges for the landlord's habitability obligations. Defendants responded through counsel on July 1, 2026. On information and belief, Defendants have continued to charge and collect the Contested Fees from their tenants since receiving that notice.

e. As to the Contested Utilities: San Diego Mun. Code § 98.1201 *et seq.* took effect August 17, 2025, and set a November 15, 2025 deadline for notice as to existing charges. Defendants, operating licensed branch offices in San Diego, did not provide compliant notice by that date and continued collecting the Contested Utilities afterward.

f. As to the Contested Utilities: Defendants know the law governing notice to tenants, as shown by their own email regarding the Ordinance, yet ignored the mandatory notice provisions of both Cal. Civ. Code § 1954.201 *et seq.* and San Diego Mun. Code § 98.1204, each of which provides that the landlord "shall" give the tenant written notice. Defendants ignored the two (2) delivery methods stated in § 98.1204(a).

g. As to both: Defendants' own Utility and Services Addendum states, "This Addendum is designed for use in multiple jurisdictions, and no billing method, charge, or fee mentioned herein will be used in any jurisdiction where such use would be unlawful." Defendants knew the legality of each charge depended on local law and charged them anyway.

77. The details of each allocation, the City bills, Conservice's charges to Defendants, and the content of each tenant's billing statements are within Defendants'

and Conservice's exclusive possession. Allegations depending on those facts are pleaded on information and belief based on the facts stated above.

78. The First Cause of Action, the Fourth Cause of Action to the extent based on 15 U.S.C. § 1692f, and the unlawful and unfair prongs of the Third Cause of Action do not require proof of fraud, deception, reliance, or intent. They rest on the fact that Defendants charged and collected amounts the law prohibits, and they are pleaded independently of any allegation of fraud.

**CLASS ACTION ALLEGATIONS**

79. Plaintiff brings this class action pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of the following Class and Subclass:

> Class - All persons who, during the period beginning four (4) years before the filing of the original Complaint in this action through the date of class certification, were tenants of residential properties in California owned and/or managed by Defendants and who were charged one or more of the Contested Fees ("Fees Class").

> Subclass - All members of the Fees Class who, during the period beginning August 17, 2025, through the date of class certification, were tenants of residential properties located within the City of San Diego, California, and who were charged one or more of the Contested Utilities ("San Diego Utilities Subclass").

80. Excluded from the Class are Defendants, their officers and directors, families and legal representatives, heirs, successors, or assigns and any entity in which Defendants have a controlling interest, and any Judges assigned to this case and their immediate families.

81. Plaintiff reserves the right to amend or modify the definition of the Class to provide greater specificity and/or further division into subclasses or limitation to particular issues.

82. **Numerosity:** The members of the Class are so numerous that joinder of all members is impracticable. The exact number or identification of class members is presently unknown, but it is believed that there are hundreds if not thousands of class

members in the Class. The identities of the Class Members are ascertainable and can be determined based on records maintained by Defendants.

83. **Predominance of Common Questions:** There are multiple questions of law and fact common to the Class that will predominate over questions affecting only individual class members. The questions of fact and law that are common to the Class Members and predominate over questions that may affect individual Class Members, include, but are not limited to:

a) Whether Plaintiff and the Class Members were charged fees alleged above;
b) Whether such fees were lawfully passed on to Plaintiff and Class Members;
c) Whether Defendants had a policy, practice, or procedure of charging Plaintiff and Class Members illegal fees;
d) Whether Defendants had a policy, practice, or procedure of collecting the charges when they did not have a legal basis for doing so;
e) Whether such charges are considered "debts";
f) Whether Defendants engaged in unfair or deceptive business practices;
g) Whether Defendants engaged in larceny;
h) Whether Defendants caused Plaintiff and Class Members damages;
i) Whether Defendants' standardized fee-disclosure forms adequately disclosed the Contested Fees and Contested Utilities;
j) Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, other monetary relief, and/or equitable relief;

84. **Commonality and Uniformity:** Defendants' conduct is uniform and centralized. Defendants use standardized form leases, revised from time to time, that embody a uniform fee policy across their California properties, maintain a centralized policy of imposing the Contested Fees regardless of which version of their form lease a particular tenant signed, and use common, automated billing and payment-processing

systems that apply tenant payments to the Contested Fees before rent. Defendants' Utility and Services Addendum makes all utility charges and fees "[w]here lawful, all utilities, charges and fees of any kind under this lease shall be considered additional rent" and allocates partial payments "first to non-rent charges and to rent last." The legality of that uniform conduct can be determined for the entire Class in a single adjudication.

85. **Standardized, Portfolio-Wide Fee Disclosures:** Defendants' fee disclosures are themselves standardized, portfolio-wide templates rather than property- or tenant-specific documents. Defendants apply the same form "Resident Fee Disclosure Addendum" across their California properties. The version of that addendum used at The Townsend illustrates its templated, non-individualized nature. For example, although captioned for The Townsend, it recites that the listed monthly charges "will apply to each lease at Millennium Santa Monica"—a different property. Defendants' own fee-disclosure form for one property refers on its face to a different property which confirms that the Contested Fees are imposed pursuant to a uniform, centralized template applied classwide, and that any purported disclosure or tenant acknowledgment of the Contested Fees is a common, form-driven practice whose adequacy and legality can be adjudicated for the entire Class in a single proceeding.

86. **Reliance and Causation Do Not Defeat Predominance:** The claims do not require individualized proof of reliance. Plaintiff's civil RICO claim is predicated on wire fraud, for which first-party reliance is not an element. Plaintiff need only show that Defendants' scheme was a common cause of the Class's injury. Under the Unfair Competition Law ("UCL"), relief is available without individualized proof of deception, reliance, or injury, and only the named Plaintiff must establish standing. *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009). Under the CLRA, Defendants' uniform representation that the Contested Fees were lawfully owed is material, and a classwide inference of reliance arises where, as here, all Class Members were exposed to the same material misrepresentation.

87. **Damages Are Measurable on a Classwide Basis:** Damages and restitution can be calculated for the entire Class by a common, formulaic method consistent with Plaintiff's theory of liability: each Class Member's recovery equals the Contested Fees and Contested Utilities that Defendants charged and collected from that member, as recorded in Defendants' own tenant ledgers, rent rolls, and billing records.

88. **Typicality:** Plaintiff's claims are typical of those of other Class Members because Plaintiff was charged illegal fees under the lease, due to Defendants' virtually identical conduct.

89. **Adequacy:** Plaintiff is an adequate representative of the Class and Subclass because Plaintiff is a member of the Class and Subclass and Plaintiff has no interests antagonistic to those of the Class. Plaintiff is represented by experienced and competent attorneys ("Class Counsel") who have litigated many class actions. Class Counsel intends to prosecute this action vigorously for the benefit of everyone in the Class. Plaintiff and Class Counsel can fairly and adequately protect the interests of all members of the Class.

90. **Superiority:** A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts. Without the class action vehicle, the Class would have no reasonable remedy and would continue to suffer losses. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. There is no foreseeable difficulty in managing this case as a class action and it provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## <u>First Cause of Action</u>

### Unlawful Utility Fees

### San Diego Mun. Code § 98.1201 *et seq.*

91. Plaintiff and Subclass Members are "tenants" within the meaning of San

Diego Mun. Code §§ 98.1202, 98.0702.

92. Each Defendant is a "landlord" within the meaning of San Diego Mun. Code §§ 98.1202, 98.0702.

93. Defendants charged Plaintiff and Subclass Members a "utility fee" in connection with a "residential rental property" within the meaning of San Diego Mun. Code §§ 98.1202 and 98.0702.

94. San Diego Mun. Code § 98.1203(a) provides that a landlord may charge a tenant a utility fee no greater than the amount the landlord actually pays for the tenant's utility services. Defendants charged Plaintiff and Subclass Members utility fees in excess of the amounts Defendants paid for the underlying utility services, including the entire Conservice Administrative Service Charge, which is not an amount the City charges for utility services. That violates San Diego Mun. Code § 98.1203(a).

95. Defendants did not provide Plaintiff the written disclosures required by Cal. Civ. Code § 1954.201 *et seq*. Defendants' own Utility and Services Addendum states that submetered water "does not apply under this Addendum." Defendants' utility charges are therefore governed by San Diego Mun. Code § 98.1201 *et seq*.

96. Defendants did not provide the proper written notice to Plaintiff and Subclass Members required by San Diego Mun. Code § 98.1204. Section 98.1204(a) provides that, to charge utility fees, a landlord "shall" give written notice in the lease or by personal delivery or mail under Cal. Code Civ. Proc. § 1162(a). Defendants did neither. Their email was not an authorized method. Defendants had no right to charge any utility fee without compliant notice, and every utility charge collected without it was unlawful.

97. Defendants did not separately identify the specific amounts charged to Plaintiff and Subclass Members related to their third-party billing service, Conservice. Defendants did not provide invoices, receipts, or other verifiable documentation to support Conservice's billing fees they charged Plaintiff and Subclass Members, as required by San Diego Mun. Code § 98.1206.

98. As a direct and proximate result of Defendants' actions and omissions, Plaintiff and Subclass Members have been harmed.

99. Plaintiff and Subclass Members are entitled to equitable relief and monetary damages in an amount to be proven at trial, including punitive damages, as permitted by San Diego Mun. Code § 98.1207.

**Second Cause of Action**

**Consumer Legal Remedies Act**

**Cal. Civ. Code § 1750 *et seq.***

100. On May 12, 2026, Plaintiff sent defendant Din/Cal Management, Inc. ("Din/Cal") a CLRA demand letter, which was sent by certified mail with return receipt requested as required by Cal. Civ. Code § 1782(a). The letter outlined Defendants' conduct that violated the CLRA and demanded relief within thirty (30) days of receipt.

101. Din/Cal made no appropriate correction, repair, replacement, or other remedy for the conduct described in the letter. The thirty-day notice-and-cure requirement of Cal. Civ. Code § 1782 has accordingly been satisfied and Plaintiff and Class Members are entitled to recover actual, statutory, and punitive damages under Cal. Civ. Code § 1780(a).

102. Din/Cal is a "person" that provides "services" to "consumers" within the meaning of the CLRA. The valet-waste and pest-control services for which Defendants charge the Contested Fees are "services" under Cal. Civ. Code § 1761(b). Plaintiff and Class Members are "consumers" who acquired those services for personal, family, or household purposes under § 1761(d). Defendants' recurring bills for those services are "transactions" under § 1761(e). Plaintiff's CLRA claim is based on the services bundled with the tenancy, not on the lease of real property itself.

103. Defendants elected to charge the Contested Fees as discrete, separately named, and separately priced line items, billed apart from base rent. Because Defendants themselves unbundled these services from the tenancy and separately marketed, priced, and billed them, the services are not merely incidental to the lease of

real property but are their own transactions for the sale or lease of services within the meaning of Cal. Civ. Code §§ 1761 and 1770. The CLRA therefore governs Defendants' advertising, pricing, and billing of the Contested Fees regardless of the real-property character of the underlying tenancy.

104. These services are not incidental to the tenancy. Each is mandatory, not optional and each has an independent market existence. On information and belief, valet waste and pest control services are sold by third-party vendors independent of any lease. Valet waste and pest control are done by Defendants' contractors—not by Defendants in their capacity as lessors.

105. The allegations in Plaintiff's CLRA letter were for violations of Cal. Civ. Code § 1770(a), including subdivisions 1770(a)(14) (representing that a transaction confers or involves rights or obligations it does not) and 1770(a)(16) (representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not).

106. Din/Cal represented that the transactions with Plaintiff and Class Members conferred or involved rights that were not conferred or involved.

107. Din/Cal represented that its illegal conduct was lawful when it was not.

108. In Plaintiff's CLRA letter, Plaintiff demanded relief for all similarly situated tenants, as permitted by Cal. Civ. Code § 1781(a).

## <u>Third Cause of Action</u>

## Unfair and Deceptive Business Practices

## Cal. Bus. & Prof. Code § 17200 *et seq.*

109. Pursuant to § 17200 of the California Business and Professions Code, "any unlawful, unfair or fraudulent business act or practice" constitutes "unfair competition."

110. The violations of law alleged herein constitute unlawful, unfair, and/or fraudulent business acts and practices, and therefore "unfair competition" for the purposes of § 17200 of the California Business and Professions Code. The unlawful

prong is independently satisfied by Defendants' violations of, among others, the implied warranty of habitability and Cal. Civ. Code §§ 1941.1, 1942.1, and 1953 (void shifting of non-waivable habitability obligations through the Contested Fees); San Diego Mun. Code § 98.1201 *et seq.*; Cal. Civ. Code § 1954.201 *et seq.*; the Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*); the Rosenthal Fair Debt Collection Practices Act (Cal. Civ. Code § 1788 *et seq.*); and statutory larceny (Cal. Pen. Code §§ 484, 496 & 532). Defendants' collection of the Contested Fees and the Contested Utilities is unlawful and entitles Plaintiff and Class Members to restitution under the UCL.

111. The fraudulent prong is independently satisfied and does not depend on any predicate statute. Defendants' monthly statements represented that the Contested Fees and Contested Utilities were owed, and Defendants' Resident Fee Disclosure Addendum describes the Conservice Administrative Service Charge as a "monthly water and sewer fee." Both are likely to deceive reasonable consumers, and did deceive Plaintiff, who paid in reliance on them.

112. Independent of any statute, Defendants' conduct is immoral, unethical, oppressive, and unscrupulous, and causes substantial injury to consumers that they could not reasonably have avoided, because the charges are mandatory, non-negotiable, and imposed across Defendants' California portfolio, and that conduct is not outweighed by any countervailing benefit to consumers or competition. Defendants' fee-shifting practices therefore constitute unfair business practices under § 17200 even if no predicate statute is violated.

113. Plaintiff and Class Members have suffered financial injuries in fact and have lost money and/or property as a result of such unfair competition.

114. The facts set forth above establish that Plaintiff and Class Members are entitled to judgment against Defendants, awarding restitution to Plaintiff and Class Members of all monies acquired by means of the described unfair competition, including all wrongfully charged fees.

**Fourth Cause of Action**

**Rosenthal Fair Debt Collection Practices Act**

**Cal. Civ. Code § 1788 *et seq.***

115. Each Defendant is a "debt collector" within the meaning of Cal. Civ. Code § 1788.2(c) of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA") because in the ordinary course of business they regularly collect rental payments, fees, and move-out costs, each of which is a "debt" as defined by Cal. Civ. Code § 1788.2(d).

116. Unlike the federal Fair Debt Collection Practices Act, the Rosenthal Act's definition of debt collector reaches a creditor collecting its own debt. The Contested Fees and Contested Utilities are a "consumer debt" arising from a "consumer credit transaction" under Cal. Civ. Code § 1788.2(e)–(f), being money alleged to be due from a natural person by reason of a transaction entered into primarily for personal, family, or household purposes.

117. Defendants violated the RFDCPA by (1) initiating contact with Class Members to collect fees and charges Defendants knew or should have known had been procured through fraud, and that, even if valid, they would be subject to a vast array of potential defenses and (2) accepting and retaining payments made on these invalid fees and charges. These acts violate 15 U.S.C. §§ 1692e and 1692f, and therefore Cal. Civ. Code § 1788.17.

118. Specifically, Defendants violated 15 U.S.C. § 1692e(2)(A) and § 1692e(10) by falsely representing on each monthly statement the character, amount, and legal status of the Contested Fees and Contested Utilities. They violated 15 U.S.C. § 1692f(1) by collecting amounts not "expressly authorized by the agreement creating the debt or permitted by law." Plaintiff does not allege harassment, she alleges false representations and unauthorized collection.

119. These misrepresentations were material. They went to whether the debt was owed at all. A misrepresentation that a charge is legally owed could cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response

to the collection effort—whether to pay, dispute, or withhold payment.

120. California courts have routinely held that the RFDCPA prohibits unfair and deceptive conduct. *Cavalry SPV I, LLC v. Watkins*, 36 Cal. App. 5th 1070, 1084 (2019).

121. As a result of every violation of the RFDCPA, Plaintiff and each Class Member are entitled to actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages of $1,000 pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney fees and costs pursuant to Cal. Civ. Code § 1788.30(c).

**<u>Fifth Cause of Action</u>**

**Statutory Larceny**

**Cal. Pen. Code §§ 484, 496 & 532**

122. Cal. Pen. Code § 484 defines "theft" and states in pertinent part:

> Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft.

123. Cal. Pen. Code § 496 imposes liability upon:

> [e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained[.]

124. Cal. Pen. Code § 532(a) separately punishes, in the same manner as larceny, every person who knowingly and designedly, by false or fraudulent representation or pretense, defrauds another of money or property. Defendants obtained

Plaintiff's and Class Members' money by representing that the Contested Fees and Contested Utilities were lawfully owed when Defendants knew they were not, constituting theft by false pretense under Cal. Pen. Code § 532(a) and providing an independent basis for liability under Cal. Pen. Code § 496.

125. Under California law, Plaintiff's and Class Members' money constitutes "property" that can be the subject of theft.

126. Defendants acted in a manner constituting theft by defrauding Plaintiff and Class Members of their money by making false or fraudulent representations or pretenses, with the specific intent to deprive Plaintiff and Class Members of their property.

127. Defendants acted with the specific intent to defraud and without any honest belief that the Contested Fees were owed. Defendants are large, sophisticated landlords that operate a multi-state portfolio, employ legal counsel, and use standardized, lawyer-drafted leases, and know that California law does not permit them to shift their own habitability obligations onto tenants.

128. Yet, Defendants charge Contested Fees that shift their own habitability obligations onto tenants, charge utility fees exceeding what Defendants themselves pay in violation of San Diego Mun. Code § 98.1203(a), and provide no documentation or formula supporting them. Each fact, together with the facts alleged in Section D of the Specific Facts above, shows that Defendants knew the Contested Fees were not lawfully owed when they represented otherwise and collected them. Plaintiff and Class Members paid the charges in reliance on Defendants' representations that they were owed. As the California Supreme Court held in *Siry Investment, L.P. v. Farkhondehpour*, 13 Cal. 5th 333 (2022), conduct of this kind is theft and not a mere contract or business dispute, entitling Plaintiff and Class Members to treble damages and attorney's fees under Cal. Pen. Code § 496(c).

**<u>Sixth Cause of Action</u>**

**Racketeer Influenced and Corrupt Organizations Act**

**18 U.S.C. §§ 1962 & 1964**

129. Under 18 U.S.C. § 1962(c), it is unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

130. Under 18 U.S.C. § 1964(c), any person injured in their business or property by reason of a violation of 18 U.S.C. § 1962 may bring a civil action to recover threefold damages, costs, and reasonable attorneys' fees.

131. At all relevant times, defendants Din/Cal Management, Inc. and TDC Management Co., L.P., together with The Townsend Apartments, LLC, Conservice, Billee, and the other ownership entities of the residential properties Defendants manage, formed and participated in an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4).

132. Each member of the enterprise is a distinct legal entity, separate from the others, with its own management and its own role in the scheme. Din/Cal Management, Inc. and TDC Management Co., L.P. set and administer the centralized fee policy across Defendants' California properties. The Townsend Apartments, LLC and the other ownership entities hold title to the individual properties and receive the rent and fee revenue the scheme generates. Conservice bills and collects the Contested Utilities from tenants on Defendants' behalf. Billee, based in Dallas, Texas, prepares and issues the monthly statements that demand payment of the Contested Fees and Contested Utilities. The enterprise is therefore distinct from Defendants named as the RICO "persons" and was organized and operated for the purpose of assessing unlawful charges and fees against tenants across Defendants' California properties to maximize profits, while systematically concealing from those tenants that such charges were unlawful and that tenants had no legal obligation to pay them.

133. The association-in-fact constitutes an "enterprise" within the meaning of 18 U.S.C. § 1961(4), because it is an ongoing association of legal entities sharing a common fraudulent purpose, an organizational structure, and functioning as a continuing unit engaged in, and whose activities affect, interstate commerce.

134. On information and belief, Conservice and Billee are unaffiliated third-party billing companies. The Townsend Apartments, LLC and the other ownership entities are not Defendants. The enterprise has operated continuously for years and continues to operate. Defendants have charged the Contested Fees throughout the class period and the Contested Utilities since the San Diego ordinance took effect.

135. Each Defendant is a "person" within the meaning of 18 U.S.C. § 1961(3) and participated in the operation and management of the enterprise itself. Defendants controlled the enterprise's affairs by devising and administering the centralized fee policy, determining which charges would be imposed on tenants, directing Conservice to bill and collect the Contested Utilities on their behalf, and controlling the revenue the enterprise generated. Defendants thus directed the enterprise's affairs and did not merely conduct their own separate business.

136. Defendants participated in the conduct of the affairs of the enterprise through a pattern of racketeering activity, specifically wire fraud in violation of 18 U.S.C. § 1343. The scheme to defraud was carried out through the following means:

a. Assessing and collecting unlawful fees from tenants, while affirmatively concealing from those tenants that such fees were unlawful and that tenants had no obligation to pay them;

b. Assessing and collecting the fees without any explanation, valid contractual basis, or legal authority, while concealing the true nature of the illegality of the fees from tenants;

c. Making material misrepresentations to tenants regarding the purported legal basis for the fees.

137. In furtherance of the scheme, Defendants utilized the interstate wire system by transmitting thousands of emails, electronic notices, payment demands, and instructions to Plaintiff and Class Members. Each such transmission was made in furtherance of the fraudulent scheme and constitutes a predicate act of wire fraud under 18 U.S.C. § 1343.

138. As set forth above, Defendants—directly and through their third-party billers, Conservice and Billee—transmitted to Plaintiff, by interstate wire, recurring monthly electronic billing statements and payment demands. Such statements identified and demanded payment of Contested Fees and Contested Utilities that Defendants represented were owed—while omitting and concealing that the charges were unlawful and that Plaintiff had no legal obligation to pay them. Defendants then collected Plaintiff's payments electronically. Each such monthly billing statement, payment demand, and payment-processing transmission was a separate use of the interstate wires in furtherance of the scheme and a distinct act of wire fraud under 18 U.S.C. § 1343. The precise date, time, and content of each such transmission to Plaintiff and to each Class Member are recorded in Defendants' and Conservice's billing and payment systems.

139. The predicate acts directed to Plaintiff alone include nine (9) monthly statements demanding the Contested Fees (July 2025 through March 2026) and eight (8) monthly statements demanding the Contested Utilities (August 2025 through March 2026), together with each electronic payment Defendants processed in response.

140. These wire transmissions were interstate in nature. Billee issues the billing statements from Dallas, Texas. Defendants operate from their principal place of business in Texas, while Plaintiff and Class Members received the billing statements and payment demands, and made the resulting payments, in California. The billing statements, payment demands, electronic notices, and payments were transmitted between states and through interstate wire, internet, and banking facilities, satisfying the interstate-commerce element of 18 U.S.C. § 1343.

141. Every payment processed by Defendants constitutes a discrete transaction in which Defendants furthered their scheme to defraud Plaintiff and Class Members of money or property.

142. Defendants sent, and continue to send, electronic communications to current and former tenants demanding payment of unlawful fees, including payment demands designed to extract payment from tenants who are unaware of their legal rights.

143. The pattern of racketeering activity engaged in by Defendants has been continuous, systematic, and ongoing, persisting for years. The predicate acts are related in that they share the same participants, the same victims—Defendants' California tenants—the same methods of commission, and the same fraudulent purpose. The predicate acts are continuous in that they have been repeated on a monthly basis across thousands of tenancies throughout California, constituting a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

144. Defendants, in their role as owners and/or property managers, collected all payments made by their defrauded tenants and controlled all communications sent to them. Through those communications, Defendants furthered the fraud by systematically concealing that the fees were unlawful and that tenants had no legal obligation to pay them.

145. As a direct and proximate result of Defendants' pattern of racketeering activity, Plaintiff and Class Members have been injured in their property, having paid millions of dollars in unlawful charges and fees they were not legally obligated to pay.

146. Defendants further violated 18 U.S.C. § 1962(d) by conspiring to conduct and participate in the conduct of the enterprise's affairs through the pattern of racketeering activity alleged above. Each Defendant knowingly agreed with the other members of the enterprise to the overall objective of assessing and collecting unlawful fees from tenants and to the commission of the predicate acts of wire fraud in furtherance of that objective.

147. As a direct and proximate result of that conspiracy, Plaintiff and Class Members suffered the injuries alleged above, and Defendants are jointly and severally liable under 18 U.S.C. §§ 1962(d) and 1964(c).

148. Pursuant to 18 U.S.C. § 1964(c), Plaintiff and Class Members are entitled to recover threefold the damages sustained, together with the costs of this action and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment on behalf of herself and Class Members as follows:

1. Certify the Class and Subclass pursuant to Fed. R. Civ. P. 23(b)(3), and appoint Plaintiff as representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel;
2. Monetary damages, punitive damages, and equitable relief under San Diego Mun. Code § 98.1207;
3. Actual damages, punitive damages, restitution, attorney fees and costs against defendant Din/Cal Management, Inc. under the CLRA, Cal. Civ. Code § 1780;
4. Restitution under the UCL, Cal. Bus. & Prof. Code § 17203;
5. Actual damages, statutory damages, attorney fees and costs, pursuant to the RFDCPA, Cal. Civ. Code § 1788.30;
6. Treble damages, attorney fees and costs, for statutory larceny pursuant to Cal. Pen. Code § 496(c);
7. Treble damages, attorney fees and costs under RICO, 18 U.S.C. § 1964(c);
8. Such other relief as the Court deems fair and reasonable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED: September 29, 2026

**SHAY LEGAL, APC**

By: *s/ Harrison J. Lynch*
Daniel G. Shay
Dan@ShayLegal.com
Harrison J. Lynch
Harrison@ShayLegal.com

DATED: September 29, 2026

**SWIGART LAW GROUP, APC**

By: *s/ Joshua B. Swigart*
Joshua B. Swigart
Josh@SwigartLawGroup.com

*Attorneys for Plaintiff*

**CLRA VENUE DECLARATION**

**(CAL. CIV. CODE § 1780(d))**

I, Harrison J. Lynch, declare as follows:

1. I am an attorney licensed to practice in California, a member of the bar of this Court, and an attorney at Shay Legal, APC, counsel of record for Plaintiff. I have personal knowledge of the facts stated in this declaration and could competently testify to them.

2. This action is filed in the proper place for trial under California Civil Code § 1780(d). Defendant does business in this District, and a substantial portion of the transactions alleged in the Complaint occurred in this District.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at San Diego, California, on September 29, 2026.

By: s/ Harrison J. Lynch
Harrison J. Lynch, Esq.